UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael CALDWELL, Defendant–
Appellant.

No. 94–1729.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 18, 1995.

Decided March 14, 1995.

Stephen J. Murphy, III (argued and briefed), Office of U.S. Atty., Detroit, MI, for plaintiff-appellee.

Leroy T. Soles (argued and briefed), Federal Public Defenders Office, Detroit, MI, for defendant-appellant.

Before: ENGEL, KENNEDY, and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Defendant Michael Caldwell appeals his conviction for dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A). Caldwell pleaded guilty pursuant to a written Rule 11 Plea Agreement which provided that he could litigate the issue presented in this appeal: whether a federally licensed firearms dealer loses his status as a licensed dealer when he engages in the business of selling firearms away from the premises specified on the license. This is a case of first impression, and based upon the plain meaning of the statute, we find that the defendant's conduct did not constitute the offense to which he pleaded guilty.

## I.

From October 1991 through August 1992, defendant was a licensed dealer of firearms. During the time that defendant possessed his license, he sold firearms away from the "licensed" premises. On November 1993, the grand jury indicted Caldwell on one count of conspiracy to distribute firearms illegally, eighteen counts of record-keeping violations and one count of dealing firearms as an unlicensed person. In return for defendant's conditional plea of guilty to dealing firearms as an unlicensed person, the government dismissed all other counts. At no time prior to defendant's plea did the Secretary of the Treasury initiate proceedings to revoke defendant's license to deal firearms as provided in 18 U.S.C. § 923(e).

## II.

■ A matter requiring statutory interpretation is a question of law requiring de novo review, *United States v. Hans*, 921 F.2d 81, 82 (6th Cir.1990), and the "starting point" for interpretation "is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). The statute is read as a whole and construed to give each word operative effect. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992).

## III.

■ The statutory provision to which defendant pleaded guilty provides that it is unlawful for "any person"

> except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce. . . .

18 U.S.C. § 922(a)(1)(A).

The government contends that a dealer's license is location specific, and therefore, defendant's admission that he sold guns away from the location specified on his dealer's license violates the statute. In short, once the licensed dealer leaves his place of business, he becomes an unlicensed person. The government argues that its interpretation of the statute is borne out by reading additional provisions in the statute and by case law.

The first provision cited by the government, 18 U.S.C. § 923(a), requires that "a separate fee" must be paid for each place at which a licensee conducts business. Secondly, the government relies on 18 U.S.C. § 923(d)(1)(E), which requires an applicant to have a "premises" from which he conducts business in order to qualify for a license. Thirdly, the government notes that a licensee must maintain records at the business premises covered by the license. 18 U.S.C. § 923(g)(1)(A).

Further, the government observes that the regulations promulgated by the Department of Treasury specify that a license to deal firearms must be obtained for each business and each place at which the applicant does business, 27 C.F.R. § 178.41(b), and that a license allows dealers to engage in the business at the location described on the license, 27 C.F.R. § 178.41.

Finally, in support of its position, the government relies on 18 U.S.C. § 923(j), which provides that a licensed dealer may conduct business temporarily at a location other than that specified on the license, provided the location meets the listed exceptions. The government contends that § 923(j) would be unnecessary if the court accepted defendant's

interpretation of § 922(a)(1)(A), namely, that dealing firearms away from a licensed premises does not constitute the crime of unlicensed firearms dealings. Thus, after reading the statute as a whole, the implication of these provisions in the aggregate lead the government to conclude that although Caldwell had a dealer's license, he was nevertheless unlicensed as to all transactions conducted at a premises other than the location specified on his license. After examining the statute, we must reject the government's reading.

In this case, we need not construe the statute by implication; we merely need to read what is included in the statute and what is omitted from the statute. Congress specifically defined the term "licensed dealer" as "any dealer who is licensed under the provisions of this chapter." 18 U.S.C. § 921(a)(11). Caldwell meets the definition, and as he notes, the statute contains no language stripping the dealer's licensed status for selling firearms away from the licensed premises. Although a thorough reading of the statute indicates that such conduct is improper and perhaps violative of other provisions, we do not equate an improper transaction with an unlicensed transaction.

Several cases lend inferential support to this construction. In *United States v. Scherer*, 523 F.2d 371 (7th Cir.1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1108, 47 L.Ed.2d 315 (1976), the court held that a licensee who deals away from his licensed premises maintains his obligations as a licensed firearms dealer. Although Scherer's argument in that case mirrored the government's argument here, that he was an unlicensed dealer at locations other than the location specified on his license (and therefore had no obligation to keep records), the court apparently rejected that contention in order to find a record-keeping violation.

Similarly, in *United States v. Cerri*, 753 F.2d 61 (7th Cir.), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985), the court upheld a warrantless search of the defendant's house as an administrative search as authorized in 18 U.S.C. § 923(g), even though the place searched was not the "licensed" premises. Section 923(g) requires

licensed firearm dealers to maintain records at their business premises and provides that the Secretary may inspect or examine those records without first securing a warrant. The appellate court reasoned that because the dealer used his home for business, his home could be treated in the same manner as a business. *Id.* at 64. In reaching this conclusion, the Seventh Circuit stated, "[A] gun dealer cannot escape the net of section 923(g) simply by moving his premises to a place different from the address on his license." *Id.* at 63. The Seventh Circuit could not have reached this outcome unless it implicitly rejected the premise that defendant was an unlicensed dealer at any location, not specified on his dealer's license, where he sold firearms.

The inferential support we draw from these cases is not undermined by the cases upon which the government relies to advance its contention that § 922(a)(1) was violated when guns are dealt at a location other than the one listed on the license. In *Powers v. Bureau of Alcohol, Tobacco & Firearms, Dep't of Treasury,* 505 F.Supp. 695, 698 (N.D.Fla.1980) (affirming the Bureau's decision to reject a license application for willful regulation violations, one of which was dealing firearms away from licensed locations), the district court found that the petitioner dealt firearms at gun shows not held at the location where he was licensed to deal, and that the petitioner's conduct violated § 922(a)(1); however, that case is neither persuasive nor binding on this court. The violation is one on a list of numerous violations, and there is nothing in the reported case to indicate that the petitioner challenged this particular finding. The *Powers* court does not discuss the finding, and given the context in which the finding was made, the appeal of a denial of a renewal of a license, we attach no significance to the case in deciding Caldwell's criminal liability.

Similarly, in *United States v. Ruisi,* 460 F.2d 153, 155 (2d Cir.) (holding that "an enterprise dealing in firearms must obtain a license for each location at which it sells guns"), *cert. denied,* 409 U.S. 914, 93 S.Ct. 234, 34 L.Ed.2d 176 (1972), the issue before us, the status of a licensed dealer selling off premises, was not raised on appeal. Consequently, it too lacks the clout necessary to support the government's position.

The government may not have it both ways. A licensed firearm's dealer is not unlicensed for liability under § 922(a)(1)(A), yet licensed for purposes of record-keeping requirements. Caldwell was a dealer "licensed under the provisions of this chapter." There has been no change in his status.

Accordingly, we **REVERSE** the judgment of conviction and remand with instructions to vacate defendant's guilty plea and dismiss Count Twenty of the Indictment.